**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RAFAEL VIZCARRA-AYALA,
                                   *Petitioner,*

v.

MICHAEL B. MUKASEY,* Attorney
General,

                                   *Respondent.*

No. 06-73237

Agency No.
A92-173-693

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
September 26, 2007—San Francisco, California

Filed January 23, 2008

Before: John R. Gibson**, Marsha S. Berzon, and
Carlos T. Bea, Circuit Judges.

Opinion by Judge Berzon

---

*Michael B. Mukasey is substituted for his predecessor, Alberto R. Gonzales, as Attorney General of the United States, pursuant to Fed. R. App. P. 43(c)(2).

**The Honorable John R. Gibson, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

## COUNSEL

Michael Adura-Miranda, Erika S. Rivera & Evangeline G. Abriel, Santa Clara University School of Law, Santa Clara, California, for the petitioner.

Peter D. Keisler, Assistant Attorney General, Emily Anne Radford, Assistant Director, & Stephen M. Elliott, Trial

Attorney, U.S. Department of Justice, Washington, DC, for the respondent.

## OPINION

BERZON, Circuit Judge:

Rafael Vizcarra-Ayala ("Vizcarra-Ayala"), a native and citizen of Mexico, challenges the Board of Immigration Appeals' ("BIA") ruling that his forgery conviction under California Penal Code § 475(c) ("Penal Code § 475(c)") renders him an aggravated felon pursuant to Immigration and Naturalization Act ("INA") § 101(a)(43)(R), 8 U.S.C. § 1101(a)(43)(R). He argues that Penal Code § 475(c) encompasses conduct involving real, unaltered documents and thus is not categorically an offense "relating to . . . forgery" under INA § 101(a)(43)(R). We agree and grant the petition.

## I.

In 2005, Vizcarra-Ayala pleaded guilty to a violation of Penal Code § 475(c), which provides that "[e]very person who possesses any completed check, money order, traveler's check, warrant or county order, whether real or fictitious, with the intent to utter or pass or facilitate the utterance or passage of the same, in order to defraud any person, is guilty of forgery." He was sentenced to two years imprisonment.

The following year, the Department of Homeland Security ("DHS") began removal proceedings against Vizcarra-Ayala. An Immigration Judge ("IJ") found him removable as an aggravated felon under INA § 101(a)(43)(R), which provides that "an offense relating to commercial bribery, counterfeiting, forgery, or trafficking in vehicles the identification numbers of which have been altered for which the term of imprisonment is at least one year" is an aggravated felony.

Vizcarra-Ayala, *pro se* throughout the administrative proceedings, appealed to the BIA. He argued generally that under the modified categorical approach, Penal Code § 475(c) did not constitute an aggravated felony. His specific argument, however, targeted the wrong ground for removal: He argued that Penal Code § 475(c) was not categorically a "crime of violence" under INA § 101(a)(43)(F) — a ground on which the IJ did not rely — because it encompassed aiding and abetting liability.[1]

In a one-paragraph opinion, the BIA dismissed the appeal. It found, "[u]pon review of the instant record, . . . that the Immigration Judge did not err in determining that the respondent's criminal conviction for forgery in violation of California Penal Code section 475(c), constitutes an aggravated felony under section 101(a)(43)(R) of the [INA]."

Vizcarra-Ayala petitions this Court for review, arguing that Penal Code § 475(c) encompasses conduct involving real, unaltered documents and thus is not categorically an offense "relating to . . . forgery."

## II.

The INA precludes judicial review over final orders of removal against any alien removable for having committed an aggravated felony, except to the extent that the petition for review raises constitutional claims or questions of law. 8 U.S.C. § 1252(a)(2)(C)-(D). "Whether an offense is an aggravated felony for the purposes of 8 U.S.C. § 1101(a)(43)(R) is a question of law and therefore not subject to the jurisdictional constraints of § 1252(a)(2)(C)." *Morales-Alegria v. Gonzales*, 449 F.3d 1051, 1053 (9th Cir. 2006).

---

[1] At the hearing before the IJ, Vizcarra-Ayala denied removability under INA § 101(a)(43)(R) but stated no legal basis for the denial.

We conduct de novo review of questions of law. *Kanka-malage v. INS*, 335 F.3d 858, 861 (9th Cir. 2003). Although the BIA's interpretation of the immigration laws is entitled to deference, *id.* at 862, its interpretation of the California Penal Code — a statute it does not administer — is not. *Garcia-Lopez v. Ashcroft*, 334 F.3d 840, 843 (9th Cir. 2003). Consequently, "we apply de novo review to 'the issue of whether a particular offense constitutes an aggravated felony.' " *Ruiz-Morales v. Ashcroft*, 361 F.3d 1219, 1221 (9th Cir. 2004) (quoting *Rosales-Rosales v. Ashcroft*, 347 F.3d 714, 717 (9th Cir. 2003)).

## III.

**[1]** We can review a final removal order only after the alien has exhausted all available administrative remedies. 8 U.S.C. § 1252(d)(1). This Court has held that the statutory exhaustion requirement is jurisdictional and thus "generally bars us, for lack of subject-matter jurisdiction, from reaching the merits of a legal claim not presented in administrative proceedings below." *Barron v. Ashcroft*, 358 F.3d 674, 678 (9th Cir. 2004).

"A petitioner cannot satisfy the exhaustion requirement by making a general challenge to the IJ's decision, but, rather, must specify which issues form the basis of the appeal." *Zara v. Ashcroft*, 383 F.3d 927, 930 (9th Cir. 2004). A petitioner need not, however, raise the *precise* argument below. In *Zhang v. INS*, 388 F.3d 713 (9th Cir. 2004), the petitioner "explicitly mentioned in his brief to the BIA that he was requesting reversal of the IJ's denial of relief under the Convention Against Torture," although apparently nothing more was said. *Id.* at 721. In other words, the specific legal ground for the challenge was not set forth. *Id.* This Court found the claim nonetheless was exhausted:

> Zhang's request was sufficient to put the BIA on notice that he was challenging the IJ's Convention

> [Against Torture] determination, and the agency had an opportunity to pass on this issue. Zhang raised the issue of Convention relief before the BIA, and our precedent requires nothing more.

*Id.* (citation omitted).

**[2]** Similarly, in *Moreno-Morante v. Gonzales*, 490 F.3d 1172 (9th Cir. 2007), this Court found the petitioner's claim exhausted where he did not make the "precise statutory argument in the proceedings below [but] . . . *did* raise his general argument . . . ." *Id.* at 1173 n.1 (emphasis in original); *see also Kaganovich v. Gonzales*, 470 F.3d 894, 897 (9th Cir. 2006) (where "[p]etitioner's notice of appeal to the BIA asserted that the 'Immigration Judge erred in disregarding that [Petitioner] entered the United States as a refugee' . . . , [his] failure to elaborate on the argument in his brief to the BIA is immaterial to our jurisdiction" over that claim) (second alteration in original); *Cruz-Navarro v. INS*, 232 F.3d 1024, 1030 n.8 (9th Cir. 2000) ("[T]he issue in question may have been argued in a slightly different manner [to the BIA] and still be preserved for appeal."). Moreover, *pro se* claims are construed liberally for purposes of the exhaustion requirement. *Agyeman v. INS*, 296 F.3d 871, 878 (9th Cir. 2002) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

**[3]** Here, Vizcarra-Ayala argued that Penal Code § 475(c) is not an aggravated felony under the modified categorical approach. As the only ground upon which the IJ found his conviction to be an aggravated felony was as an offense relating to forgery, the BIA had sufficient notice that Vizcarra-Ayala's challenge — though directed at a different part of the aggravated felony definition — was intended to challenge the ground on which he was ordered removed.

Further, our precedent is quite clear that claims addressed on the merits by the BIA are exhausted. *See Abebe v. Gonzales*, 432 F.3d 1037, 1040-41 (9th Cir. 2005) (en banc);

*Socop-Gonzalez v. INS*, 272 F.3d 1176, 1186 (9th Cir. 2001) (en banc). Here, the BIA did not simply reject the arguments that Vizcarra-Ayala raised as irrelevant because the IJ did not find his conviction to be a crime of violence. Instead, it recognized that the issue raised was whether a conviction under Penal Code § 475(c) constituted an aggravated felony under INA § 101(a)(43)(R). After conducting an independent review of the record, it found "that the [IJ] did not err in determining that the respondent's criminal conviction for forgery in violation of California Penal Code section 475(c), constitutes an aggravated felony under section 101(a)(43)(R) of the [INA]."

**[4]** The BIA had notice of the claim and ruled on the merits. There was therefore adequate exhaustion.

## IV.

The INA defines "aggravated felony" as any one of a series of offenses, including "an offense relating to . . . forgery . . . for which the term of imprisonment is at least one year." INA § 101(a)(43)(R). *Taylor v. United States*, 495 U.S. 575 (1990), provides the analytical framework to determine whether a conviction is one "relating to . . . forgery."[2] First, the court determines whether the statute encompasses offenses that are narrower than or equal to the federal definition of "an offense relating to . . . forgery." If so, a conviction under the state statute necessarily implies that the conviction is one relating to forgery. *Id.* at 599. If, however, the statute is overinclusive, the modified categorical approach permits an examination of certain documents in the record "to determine if the record unequivocally establishes that the defendant was convicted of the generically defined crime . . . ." *United States v. Corona-Sanchez*, 291 F.3d 1201, 1211 (9th Cir. 2002) (en

---

[2]We give no weight to the fact that the California Penal Code classifies § 475(c) as a forgery offense. *See Taylor*, 495 U.S. at 590-91 (Congress did not intend the meaning of an offense for sentencing enhancement purposes to depend on the various states' definitions).

banc), *superseded on other grounds by* USSG §2L1.2, cmt. n. 4 (2002).

## A.   "Offense relating to . . . forgery"

We begin by considering the reach of the phrase "offense relating to . . . forgery." Forgery developed from the common-law crime of larceny and thus should be defined by its "generic, core meaning." *Morales-Alegria*, 449 F.3d at 1054; *see also Corona-Sanchez*, 291 F.3d at 1204. To determine this meaning, "we look to common-law definitions, the generic sense in which the term is now used in the criminal codes of most states, as well as other circuits' analyses of the generic offense." *Morales-Alegria*, 449 F.3d at 1054 (quotations and citations omitted).

The essential elements of the common law crime of forgery are "(1) a false making of some instrument in writing; (2) a fraudulent intent; [and] (3) an instrument apparently capable of effecting a fraud." *Id.* at 1055 (alteration in original) (quoting *State v. Wheeler*, 20 Or. 192, 195 (1890)). As Vizcarra-Ayala's argument targets the false nature of the document, our discussion of forgery focuses on that element.

Contemporary treatises emphasize that forgery requires the falsification of a document or instrument. "Forgery is a crime aimed primarily at safeguarding confidence in the genuineness of documents relied upon in commercial and business activity. Though a forgery, like false pretenses, requires a lie, it must be a lie about the document itself: the lie must relate to the genuineness of the document." 3 WAYNE R. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 19.7(j)(5) (2d ed.) [hereinafter "LAFAVE"] (footnotes omitted). Falsifying the genuineness of a document is so critical to the offense of forgery that "when a person writes a letter or completes a loan application or other instrument and signs it with his own name, he is not guilty of forgery because a false statement is contained therein, even if he knew it was false and acted with intent to

defraud." 4 WHARTON'S CRIMINAL LAW § 487 (15th ed.). The Model Penal Code echoes this understanding, defining forgery, in relevant part, as "alter[ing] any writing of another without his authority" or making "any writing so that it purports to be the act of another who did not authorize that act." MODEL PENAL CODE § 224.1(1).

**[5]** Other circuits and the Supreme Court have also concluded that forgery requires the falsification of a document. *See, e.g.*, *Gilbert v. United States*, 370 U.S. 650, 658 (1962) ("Where the 'falsity lies in the representation of facts, not in the genuineness of execution,' it is not forgery."); *United States v. Hunt*, 456 F.3d 1255, 1260-64 (10th Cir. 2006) (concluding, after a lengthy analysis, that "forgery at common law depends on genuineness of execution, and does not extend to an agent's false assertion of authority to act on behalf of his principal"); *United States v. Reagle*, 740 F.2d 266, 269 (3d Cir. 1984) ("[T]his Court has narrowly construed the elements of forgery to encompass only the false making or alteration of a writing of legal significance with the intent to defraud."); *United States v. Jones*, 553 F.2d 351, 355 (4th Cir. 1977) ("In criminal cases the great weight of authority holds false statements in or fraudulent execution of otherwise valid instruments not to be forgery within its common law or unexpanded meaning.") (citation omitted); *Asher v. United States*, 480 F.2d 580, 583 (6th Cir. 1973) ("[I]t has generally been held that the genuine making of a writing for the purpose of defrauding another is not forgery.") (quoting *Wright v. United States*, 172 F.2d 310, 311 (9th Cir. 1949)).

**[6]** This unanimity is significant in part because "[w]e are . . . mindful of the desirability of a uniform, national definition." *Corona-Sanchez*, 291 F.3d at 1205 (citing *Taylor*, 495 U.S. at 590-92). In light of this unanimity, it is clear that an essential element of the generic offense of forgery is the false making or alteration of a document, such that the document is not what it purports to be.

## B. California Penal Code § 475(c)

California Penal Code § 475(c) states that "[e]very person who possesses any completed check, money order, traveler's check, warrant or county order, *whether real or fictitious*, with the intent to utter or pass or facilitate the utterance or passage of the same, in order to defraud any person, is guilty of forgery." (emphasis added).

Although the government concedes that "use of a false instrument is a key element of generic forgery," it argues that the California statute's application to "real" instruments merely includes genuine document forms on which the added information — the signature, for example — is forged. It argues that the "real or fictitious" difference to which the California statute refers is, for example, between forging a signature on a real check stolen from a person's checkbook versus printing a piece of paper purporting to be another person's check. The government is correct that both these acts constitute offenses relating to generic forgery.

[7] California has used Penal Code § 475(c), however, to prosecute conduct that does not fall within the generic definition of forgery; namely, possession or use of a genuine instrument with intent to defraud but not to forge. In *People v. Viel*, No. D044101, 2005 WL 904806 (Cal. Ct. App. 4th Dist. Apr. 20, 2005) (unpublished),[3] Viel lived in an apartment above a

---

[3]With limited exceptions not applicable here, "an opinion of a California Court of Appeal or superior court appellate division that is not certified for publication or ordered published must not be cited or relied on by a court or a party in any other action." Cal. Rule of Court 8.1115.

The unpublished cases discussed here are pertinent, however, only to show that Penal Code § 475(c) has actually been applied to conduct falling outside of the generic definition of forgery. The Supreme Court recently held that such a showing is required. *See Gonzales v. Duenas-Alvarez*, ___ U.S. ___, 127 S.Ct. 815, 822 (2007) (petitioner must demonstrate "a realistic probability, not a theoretical possibility, that the State would apply its

storefront organization called Mongoose Boxing/Any Body Can Youth Foundation. *Id.* at *1. She received in the mail a check for $2,500 made payable to "ABC (Any Body Can)." According to her testimony, Viel believed it was a reward for helping a police detective who, not remembering her name, made the check out to "Any Body." *Id.* at *1-*2. The state argued that she knew the check was not meant for her. In any event, Viel took the check, unaltered, to a check-cashing business and tried to cash it. When asked for identification and a signature on the back of the check, she provided her own identification and signature.[4] *Id.* at *1. The jury convicted her of forgery under Penal Code § 475(c).

These facts would not establish forgery under the generic definition, as the document was not falsified in any way. Viel did not alter the identity of the payee. She endorsed the check with her own name. As the heart of forgery is "a lie about the document itself," LaFave § 19.7(j)(5), even if Viel knew she had no right to the check and acted with the intent to defraud, she did not commit forgery in the generic meaning of the offense.

---

statute to conduct that falls outside the generic definition of a crime" by pointing to cases "in which the state courts in fact did apply the statute in the special (nongeneric) manner"); *see also United States v. Grisel*, 488 F.3d 844, 850 (9th Cir. 2007) (en banc). The use of unpublished decisions for this purpose is warranted. This Court has so held in the analogous context of examining a state's practice in applying a procedural bar for the purposes of habeas review. *See Powell v. Lambert*, 357 F.3d 871, 879 (9th Cir. 2004) (reviewing state's published and unpublished decisions in analyzing application of procedural rule because "it is the actual practice of the state courts, not merely the precedents contained in their published opinions, that determine the adequacy of procedural bars preventing the assertion of federal rights") (citing *Valerio v. Crawford*, 306 F.3d 742, 776 (9th Cir. 2002) (en banc)).

[4]Although the case does not expressly state the identification and signature were hers, that is plainly implied. In discussing the evidence of her intent to defraud, the court makes no mention of any falsity of identification or signature. *See id.* at *6.

*People v. Leonard*, No. G032720, 2004 WL 2610365 (Cal. Ct. App. 4th Dist. Nov. 17, 2004) (unpublished), provides another example. Leonard was the office manager and treasurer at Fullerton Millwork, and in that capacity was an approved signatory on the company's checking account. *Id.* at *1. Although she was authorized to use company funds only for office supplies, she wrote several checks for her own personal use, including one for "cash," on Fullerton Millwork's bank account. Leonard used the proceeds from the "cash" check to purchase two cashier's checks payable to her landlord or management company for a security deposit and rent. Those three instruments — the check for "cash" and the two cashier's checks — provided the basis for three counts of violating Penal Code § 475(c). *Id.* at *1, 3.

Again, there was nothing false about the documents. The checks were real Fullerton Millwork checks. Leonard's signature was genuine. The cashier's checks were not altered or falsified. That she knowingly lacked authority to draw company checks for her personal purposes may have made her conduct fraud, but not forgery under the generic definition. *See Hunt*, 456 F.3d at 1260-64 (a genuine document signed by an agent acting outside his authority does not fall within the common law definition of forgery); *see also Gilbert*, 370 U.S. at 650-51, 659 (where defendant endorsed a check with payee's name and his own signature with the designation "Trustee," purporting to be the payee's authorized agent, it was not forgery under the common law definition).

**[8]** These two California cases target conduct that plainly is not generic forgery. Nor is it an "offense relating to . . . forgery." Courts have not used the phrase "relating to" to extend INA § 101(a)(43)(R) to offenses not necessitating any proof of a forgery or inchoate forgery. Instead, "relating to" has been applied to include activities ancillary to the core offense — for example, possession of counterfeit or forged documents, *Albillo-Figueroa v. INS*, 221 F.3d 1070 (9th Cir. 2000); *Richards v. Ashcroft*, 400 F.3d 125 (2d Cir. 2005);

knowing use of a counterfeit mark, *Park v. Attorney General*, 472 F.3d 66 (3d Cir. 2006); and forging documents with the intent to "deceive," as opposed to the traditional "defraud," *Drakes v. Zimski*, 240 F.3d 246 (3d Cir. 2001). In all of these instances, the offense required proof of the basic forgery element absent in the California statute, namely, a false instrument. Expanding the definition of offenses "relating to" forgery to include conduct where documents are not altered or falsified stretches the scope too far. California Penal Code § 475(c) is therefore not categorically an offense "relating to . . . forgery" within the meaning of INA § 101(a)(43)(R).

## C.   Vizcarra-Ayala's conduct

Where a prior offense does not categorically meet the requisite "aggravated felony" definition, we apply, in certain circumstances, the so-called "modified categorical approach" to determine "if there is sufficient evidence to conclude that a defendant was convicted of the elements of the generically defined crime even though his or her statute of conviction was facially overinclusive." *United States v. Kelly*, 422 F.3d 889, 892 (9th Cir. 2005) (quoting *Chang v. INS*, 307 F.3d 1185, 1189 (9th Cir. 2002)).

Vizcarra-Ayala contends the government has failed to meet its burden under the modified categorical approach to show that his conviction necessarily included the requisite elements of the generic offense of forgery.[5] We agree.

---

[5]"When the crime of conviction is missing an element of the generic crime altogether, we can never find that 'a jury was actually required to find all the elements of' the generic crime." *Navarro-Lopez v. Gonzales*, 503 F.3d 1063, 1073 (9th Cir. 2007) (en banc), (citing *Li v. Ashcroft*, 389 F.3d 892, 899-901 (9th Cir. 2004) (Kozinski, J., concurring)). While Penal Code § 475(c) arguably is missing an element of the generic crime of forgery — the presence of a fictitious or falsely made document — Vizcarra-Ayala has not raised this particular argument before the BIA or this court. We need not decide whether the argument has been exhausted before the BIA and adequately raised before this court, and if it has, whether it has merit, because we grant the petition on other grounds which Vizcarra-Ayala has exhausted before the BIA and the parties have briefed on appeal.

**[9]** To determine the elements of which a particular defendant was convicted, courts can look to "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Shepard v. United States*, 544 U.S. 13, 26 (2005).

**[10]** The only judicial record of Vizcarra-Ayala's conviction the government produced was an Abstract of Judgment. The Abstract in this case, assuming it may be relied upon,[6] provides no indication of the context surrounding Vizcarra-Ayala's offense: It states only that Vizcarra-Ayala was convicted of violating Penal Code § 475(c), and thus provides no information regarding whether the conviction involved an altered or falsified document. Absent evidence that his conviction was for an offense relating to forgery within the scope of INA § 101(a)(43)(R), it cannot be used as a basis of removal on that ground.

## V.

California Penal Code § 475(c) encompasses conduct that does not "relat[e] to . . . forgery." As the record does not demonstrate that Vizcarra-Ayala's conviction was for conduct relating to forgery, his removal order cannot stand.

The petition is GRANTED.

---

[6]We recently disapproved any use of Abstracts of Judgment in the modified categorical approach. *See United States v. Snellenberger*, 493 F.3d 1015, 1020 & n.5 (9th Cir. 2007) (petition for rehearing en banc pending). Here, however, there is insufficient proof regarding the underlying conduct even if we allow use of the Abstract of Judgment.